UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN L. WILLIS,<br><br>      Plaintiff,<br><br>v.<br><br>NEIL TENNANT; CHRIS LOWE; and WARNER MUSIC GROUP,<br><br>      Defendants. | Case No.: 25-CV-491 TWR (DEB)<br><br>**ORDER GRANTING DEFENDANTS NEIL TENNANT AND CHRIS LOWE'S MOTION TO DISMISS FOR 1) LACK OF PERSONAL JURISDICTION, 2) FAILURE TO STATE A CLAIM, AND 3) INSUFFICIENT SERVICE OF PROCESS AND DENYING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**<br><br>(ECF Nos. 9, 12) |

  Presently before the Court are Moving Defendants Neil Tennant and Chris Lowe's Motion to Dismiss ("MTD," ECF No. 9) and the Motion for Alternative Service of Complaint ("Alt. Ser. Mot.," ECF No. 12) filed by Plaintiff Karen L. Willis, dba Harlem West Music Group (together, the "Motions"), both of which are fully briefed. (*See* ECF Nos. 14 ("MTD Opp'n"), 19 ("MTD Reply"), 16 ("Alt. Ser. Opp'n"), 20 ("Alt. Ser. Reply"). The Court heard oral argument on the Motions on October 16, 2025. (*See* ECF No. 21.) The Court **GRANTS** Defendants Neil Tennant and Chris Lowe's Motion to Dismiss in full, **DISMISSES WITHOUT PREJUDICE** Plaintiff Karen L. Willis's First

Amended Complaint ("FAC," ECF No. 7), and **DENIES** Plaintiff Karen L. Willis's Motion for Alternative Service of Complaint.

## BACKGROUND

### I. Factual Background

#### A. Copyright Infringement

On behalf of Harlem West Music Group, Willis sued Moving Defendants Tennant and Lowe, the members of the band Pet Shop Boys, and Warner Music Group for copyright infringement. (*See generally* FAC.) Warner Music Group is responsible for obtaining authorization to use music for the Pet Shop Boys. (*See id.* ¶ 3.) Plaintiff is the wife of Victor Willis, the lead singer of the band the Village People. (*Id.* at 1.) This lawsuit centers on the Pet Shop Boys' version of the Village People's song "Go West" and the distribution of a motion picture that includes a video of Tennant and Lowe performing the Pet Shop Boys' version of "Go West." (*See generally id.*) Plaintiff was assigned the rights to the "Go West" copyright in 2013. (*See id.* at 1.) Plaintiff is suing based on offense her husband took when Tennant spoke badly of the Village People's version of "Go West" and then refused to speak with him. (*See id.* at ¶¶ 10–12.)

The Village People originally created and released the song "Go West." The Pet Shop Boys then revised and released their own version of "Go West." (*Id.* ¶¶ 7–8.) While Victor Willis "has never been too happy with" the Pet Shop Boys' version of "Go West," Tennant and Lowe maintained a good relationship with the Village People and Victor Willis until January 2024. (*Id.* ¶¶ 9–10.) In January 2024, Victor Willis saw a video where Tennant allegedly spoke poorly about the Village People's original version of "Go West." (*Id.* ¶ 10.) Victor Willis wanted to speak with Tennant on the phone about the incident, but Tennant refused to call him. (*Id.* ¶¶ 10–11.) Because Victor Willis was offended by Tennant's refusal to call him, he revoked his approval of the Pet Shop Boys' use of "Go West" by informing the Pet Shop Boys' manager. (*See id.* ¶¶ 12–14.)

On July 7, 2023, before Victor Willis revoked his approval of the Pet Shop Boys' use of "Go West," the Pet Shop Boys performed their version of "Go West" at a concert in

Copenhagen, Denmark.  (*See* ECF No. 9-2 ("Tennant Decl.") ¶ 6.)  An English company that neither Tennant or Lowe have "ownership or other interest in" filmed this concert performance and used it to prepare a concert film titled *Pet Shop Boys Dreamworld: The Greatest Hits Live*.  (*Id.*; ECF No. 9-3 ("Lowe Decl.") ¶ 6.)  Warner Music Group reached out to Plaintiff's synchronization agent, Reach Music, about approval for the use of "Go West" in the concert film *Pet Shop Boys Dreamworld: The Greatest Hits Live*.  (*See* FAC ¶¶ 15–16.)  Plaintiff denied this request and Reach Music communicated this denial to Warner Music Group.  (*Id.* ¶ 17.)

Despite the denial, the concert film included the video of Tennant and Lowe performing their version of "Go West," and *Pet Shop Boys Dreamworld: The Greatest Hits Live* was released between January 31, 2024, and February 4, 2024, in approximately 1,500 theaters worldwide, including in California.  (*Id.* at 1.)  One of the screenings was in San Diego at the AMC in Mission Valley.  (*Id.* ¶ 21.)  Other screening locations included "countries in Europe, Eastern Europe, Asia, the Middle East, and Central and South America, and in Canada, Australia, and New Zealand."  (Tennant Decl. ¶ 8.)  *Pet Shop Boys Dreamworld: The Greatest Hits Live* was subsequently released to PBS television.  (*Id.*)  Plaintiff further alleges that the Pet Shop Boys planned to release something including their rendition of "Go West" to Blu-ray in May 2025.  (*Id.* at 1, ¶ 20.)

Tennant and Lowe allege the production company that filmed their performance in Copenhagen is responsible for the creation and distribution of the concert film to theatres and PBS.  (Tennant Decl. ¶¶ 6–7; Lowe Decl. ¶¶ 6–7.)  Tennant and Lowe allege that while they wanted the concert film to be "enjoyed around the world," they did not "suggest that it should be specifically directed to California" nor did they take "any steps to specifically direct it to California."  (*Id.* ¶ 8; Tennant Decl. ¶ 9.)

**B.    Service of Process**

On March 12, 2025, Plaintiff emailed Angela Becker, the manager of the Pet Shop Boys, and requested that Ms. Becker inform her of "who would accept service" on Moving Defendants' behalf.  (ECF No. 13 ("Willis Decl.") ¶ 3.)  Ms. Becker did not respond.  (*See*

*id.*) Plaintiff then mailed a copy of the Summons and Complaint to Ms. Becker at her office in Beverly Hills, California. (*See id.* ¶ 4.) Plaintiff also mailed service to Ms. Becker's London office. (*See id.* ¶ 5.) Next, Plaintiff performed a "skip trace" on Tennant and Lowe and sent service to the United Kingdom address provided from the trace. (*See id.* ¶ 6.) Plaintiff also states that there is "an ongoing attempt" to effect service on Tennant and Lowe at a different United Kingdom address. (*See id.* ¶ 7.)

Then, after Peter Anderson, Tennant and Lowe's California-based lawyer, reached out to Plaintiff and engaged in settlement discussions, Plaintiff served Mr. Anderson via FedEx. (*See id.* ¶¶ 8–9, 14–16; ECF No. 15 ("Ex. A").) The FedEx service was received and signed for at Mr. Anderson's office or mailroom on July 9, 2025. (*See id.*) On July 15, 2025, Plaintiff filed Proofs of Service for Tennant and Lowe based on the service on Mr. Anderson. (ECF No. 8-1; ECF No. 8-2 ("Proofs of Service").) Mr. Anderson alleges that the copies of the Summons were never received by him or his law firm. (MTD at 6; ECF 9-4 ("Anderson Decl.") ¶ 7.)

Plaintiff did not attempt to serve Tennant or Lowe pursuant to the Hague Convention. Plaintiff originally claimed that it would take six to nine months to do so. (*See* Alt. Ser. Mot. at 3.) But during the hearing, Plaintiff stated that she had been told it would take a minimum of 90 days to effectuate service in the United Kingdom pursuant to the Hague Convention. (*See* ECF No. 21.) Moving Defendants claim service in the United Kingdom pursuant to the Hague Convention can take less than a month. (*See* Alt. Ser. Opp'n at 4.)

## II. Procedural History

On March 10, 2025, Plaintiff filed her initial Complaint, alleging that Moving Defendants committed direct copyright infringement and that Warner Music Group committed vicarious copyright infringement. (*See* ECF No. 1 ¶¶ 23–37.) On April 11, 2025, Plaintiff filed an Amended Complaint making the same allegations. (*See* FAC ¶¶ 23–37.) On July 30, 2025, Moving Defendants filed their Motion to Dismiss for 1) insufficient service of process, 2) lack of personal jurisdiction, and 3) failure to state a

claim, (ECF No. 9), and Plaintiff filed her Motion for Alternative Service of Complaint on August 12, 2025. (ECF No. 12.)

## ANALYSIS

Moving Defendants seek dismissal of Plaintiff's sole cause of action against them based on: (1) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), (2) failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and (3) failure to effect sufficient service of process under Federal Rule of Civil Procedure 12(b)(5). (*See generally* MTD.) In the event the Court finds Plaintiff's service was insufficient, Plaintiff seeks the Court's approval for alternative service of her First Amended Complaint. (*See generally* Alt. Serv. Mot.) This Order addresses each of the Parties' arguments in turn.

### I.  Rule 12(b)(2)

####    A.  Legal Standard

"A Court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018). Constitutionally, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Statutorily, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Civ. Proc. Code § 410.10.

The Supreme Court has recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* (quoting *Goodyear*, 564 U.S. at 924). "A court with general jurisdiction

may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).

For a state court to exercise specific jurisdiction, by contrast, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction is analyzed under a three-prong test: "(1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Mavrix Photo, Inc. v. Brand Techs.*, Inc., 647 F.3d 1218, 1227–28 (9th Cir. 2011) (emphasis in original) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden of establishing the first two prongs and if they do, the burden then shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1228 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Under prong one, for suits sounding in tort, including copyright infringement which is a "tort-like cause of action, purposeful direction 'is the proper analytical framework.'" *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). To establish purposeful direction, there is a three-part test stemming from the case *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. Under the *Calder* effects test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Further, the "placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a

forum state." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007). "Even a defendant's awareness that the stream may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.*

### B. Analysis

As an initial matter, Plaintiff claims there was "no need for [her] to respond at this time" to Moving Defendants' claim that the Court lacks personal jurisdiction because the Court "lack[s] jurisdiction" to hear the issue until the "service of process issue has been decided." (MTD Opp'n at 6.) This is incorrect. The Court can decide the Motion to Dismiss on any of the grounds presented by the Moving Defendants. *See, e.g., City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 695–96 (N.D. Cal. 2020) (considering all bases for dismissal including failure to state a claim, insufficient service, and lack of personal jurisdiction). Therefore, Plaintiff's failure to substantively respond to Moving Defendants' personal jurisdiction argument could be construed as consent to the Court granting the Motion to Dismiss on that basis under Civil Local Rule 7.1(f)(3)(c) and Section III.A.2 of the undersigned's Standing Order for Civil Cases. Nonetheless, it is the Court's preference to resolve the issues on the merits.

While unclear from Plaintiff's briefing, Plaintiff asserted at the hearing that she is only alleging this Court has specific personal jurisdiction over Moving Defendants, not general personal jurisdiction. (*See* ECF No. 21.) Moving Defendants argue that this Court lacks specific personal jurisdiction over them under Rule 12(b)(2). (*See* MTD at 6–9.) As set forth below, Defendants are correct. While jurisdiction over each defendant must be assessed individually, *see Calder v. Jones*, 465 U.S. 783, 790 (1984), because the allegations by Plaintiff and arguments by Tennant and Lowe are the same, the Court considers Moving Defendants' arguments together.

#### 1. Purposeful Direction

Under the *Calder* effects test, the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

likely to be suffered in the forum state. *See Schwarzenegger*, 374 F.3d at 803. To establish specific personal jurisdiction, "[a]ll three parts of the test must be satisfied." *Id.* at 805. Here, Plaintiff fails to allege all three.

### a. Intentional Act

The word "act" has been defined as "an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended." *Id.* (citing Restatement (Second) of Torts § 2 (1964)). Plaintiff does not allege any independent acts by Tennant or Lowe other than a conclusory statement that Moving Defendants infringed the copyright by "engaging in acts causing the infringing work to be reproduced, distributed, displayed, and publicly performed." (FAC ¶ 25.) But the only actual act apparent from the facts alleged is that Tennant and Lowe performed "Go West" at a concert that was filmed and there is no argument that the concert was directed at California. In relation to the concert film distributed in California, Plaintiff fails to allege any acts by Tennant or Lowe that contributed to the distribution or display of *Pet Shop Boys Dreamworld: The Greatest Hits Live*. Because Plaintiff fails to allege an intentional act, she has failed to allege purposeful direction.

### b. Expressly Aimed

The second element of the *Calder* effects test "requires that the defendant's conduct be expressly aimed at the forum." *Liberty Media Holdings, LLC v. Tabora*, No. 11-CV-651-IEG JMA, 2011 WL 4626162, at *4 (S.D. Cal. Oct. 4, 2011) (citation omitted). Here, Plaintiff has not alleged that Moving Defendants contributed to the distribution or display of *Pet Shop Boys Dreamworld: The Greatest Hits Live* in California. Absent specific allegations about Moving Defendants actions contributing to the distribution of the concert film *Pet Shop Boys Dreamworld: The Greatest Hits Live*, allowing a third party to distribute the film in California does not satisfy express aiming. *See Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (finding a defendant was not "expressly aiming" when it sold a product to a third party who did business in the forum).

Express aiming can also be satisfied "where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F.Supp.2d 1093, 1105 (C.D. Cal. 2007). But Plaintiff does not allege that Moving Defendants knew that Plaintiff, Harlem Music Group or Karen Willis, own the "Go West" copyright or that either is located in California. (*See generally* FAC.) Because Plaintiff fails to allege express aiming, she has failed to allege purposeful direction.

      c. Harm in the Forum State

Because Plaintiff fails to allege Moving Defendants knew that either Harlem Music Group or Karen Willis is located in California, Plaintiff failed to allege foreseeable harm in California. *See Liberty Media Holdings, LLC*, 2011 WL 4626162, at *4 ("Absent allegations that Defendant knew Plaintiff was a California resident, Plaintiff has not satisfied the 'forseesability' element of the *Calder* test.").

    2. Arises out of or Relates to

The second prong of specific personal jurisdiction is similarly deficient. While Plaintiff alleges that Moving Defendants do "business in San Diego," including "recent concert appearances," she does not allege that any recent concert appearances are related to the copyright infringement alleged in this case. (FAC ¶ 2.) Further, Plaintiff alleges that the "motion picture starring Tennant and Lowe where copyright infringement was committed . . . was screened right here in San Diego on several occasions in 2024 at the AMC Mission Valley Theatre." (*Id.*) While the motion picture is the alleged infringing activity, Plaintiff fails to allege any acts by Moving Defendants in the forum state relating to the distribution or display of *Pet Shop Boys Dreamworld: The Greatest Hits Live*. Therefore, Plaintiff fails to allege that her injury arose out of or is related to any conduct by Moving Defendants in California.

/ / /

/ / /

### 3. *Fair Play and Substantial Justice*

If Plaintiff met her "burden on the first two prongs of the specific personal jurisdiction inquiry," the burden would shift to Moving Defendants to present a compelling case on why the exercise of jurisdiction would not be reasonable and fair. *See Schwarzenegger*, 374 F.3d at 802. But here, the burden never shifts to Moving Defendants.

Even if it did, as the Ninth Circuit explained in *Dole Food Co.*, the fact that Moving Defendants live in Europe weighs against the exercise of jurisdiction. 303 F.3d at 1115. Moving Defendants state that it would be "an extreme burden" to defend this action thousands of miles away from England. (Tennant Decl. ¶ 14; Lowe Decl. ¶ 13.) But this factor is not dispositive and the court notes that Moving Defendants have traveled to the U.S. to perform concerts, (FAC ¶ 2,) which reduces the weight of the alleged burden. *See Dole Food Co.*, 303 F.3d at 1115 (finding that past travels to the United States for business mitigate an alleged burden of traveling to the United States for litigation). If Plaintiff could allege facts sufficient for the first two prongs of specific personal jurisdiction, then the Court would consider the other factors relevant to fair play and substantial justice, such as the forum state's interest in adjudicating the dispute and where there can be an efficient judicial resolution of the controversy. *See id.* at 1114.

For the above reasons, the Court **GRANTS** the Motion to Dismiss **WITHOUT PREJUDICE** for lack of personal jurisdiction under 12(b)(2).

## II. Rule 12(b)(6)

Even if Plaintiff had adequately pled personal jurisdiction over Moving Defendants, Plaintiff's cause of action against Moving Defendants would still fail under Rule 12(b)(6) for failing to state a claim on which relief can be granted.

### A. *Legal Standard*

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," backed by sufficient facts that make the claim "plausible on its face." Fed. R. Civ.

P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 566 U.S. at 678. Rather, it demands enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In ruling on a 12(b)(6) motion, the court must accept as true "all factual allegations in the complaint" and "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). This presumption does not extend to conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses a complaint for failure to state a claim, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### B.     Analysis

As discussed in Section I(B), Plaintiff incorrectly believed she did not need to respond to issues outside of service of process. (MTD Opp'n at 6.) Therefore, Plaintiff's failure to substantively respond to Moving Defendants' 12(b)(6) argument could be construed as consent to the Court granting the Motion to Dismiss on that basis under Civil Local Rule 7.1(f)(3)(c) and Section III.A.2 of the undersigned's Standing Order for Civil Cases. Nonetheless, it is the Court's preference to resolve the issues on the merits.

Plaintiff alleges direct copyright infringement against Moving Defendants. (FAC ¶ 23.) Under 17 U.S.C. § 106, to present a prima facie case of direct infringement, a plaintiff must (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

For the first element of direct infringement, Plaintiff alleges that the copyright at issue was "totally assigned to her." (FAC at 1.) Moving Defendants do not dispute that Plaintiff has ownership of the allegedly infringed material. (*See* MTD at 13–14.) The only dispute whether Plaintiff has sufficiently alleged that Moving Defendants violated at least one exclusive right.

Regarding the second element, Moving Defendants allege that Plaintiff failed to state a claim for direct infringement because the alleged distribution and display of the concert film was done by other entities. (*See id.*) Moving Defendants claim their only alleged action relating to "Go West" was performing live at a concert in Copenhagen, which both parties agree was allowed. (*Id.* at 14.) Specifically, Moving Defendants allege that "they did not broadcast or exhibit the concert film. Accordingly, they did not reproduce, distribute, display, or publicly perform the 'motion picture,' so they cannot be direct infringers." (*Id.*) Moving Defendants further state, to the best of their knowledge, "the same company that produced the Pet Shop Boys Dreamworld concert film also licensed its theatrical exhibition, including in the United States." (Tennant Decl. ¶ 8; Lowe Decl. ¶ 7.)

Plaintiff alleges that "[b]y *engaging in acts* causing the infringing work to be reproduced, distributed, displayed, and publicly performed in a motion picture, on PBS, television, and Blu-ray," Moving Defendants violated her exclusive rights. (FAC ¶ 25) (emphasis added). But this conclusory statement that Moving Defendants "engaged in acts" is not enough to plausibly state a claim for direct copyright infringement. *See, e.g., Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050, 1070 (N.D. Cal. 2025) (finding plaintiffs failed to plead a claim because a "single conclusory sentence alleging that Defendants 'committed and/or engaged in acts denominated as unlawful predicate offenses" is "not enough"). Plaintiff's factual allegations also fail to allege any specific conduct by Moving Defendants. For example, the alleged requests to use "Go West," center on communications with "Warner Music." (*See* FAC ¶¶ 15–18.) Because Plaintiff's FAC only includes conclusory allegations about Moving Defendants' actions, Plaintiff did not

sufficiently allege Moving Defendants violated at least one of her exclusive rights as a copyright holder.

Plaintiff therefore fails to plausibly allege direct copyright infringement, and the Court thus **GRANTS** the Motion to Dismiss **WITHOUT PREJUDICE** for failure to state a claim under Rule 12(b)(6).

## III.  Rule 12(b)(5)

### A.  Legal Standard

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. V. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  When a party objects to "the manner or method of its service[,]" Federal Rule of Civil Procedure 12(b)(5) authorizes them to move for dismissal due to insufficient service of process.  *See Wasson v. Riverside Cnty.*, 237 F.R.D. 423, 424 (C.D. Cal. 2006); *see also* Fed. R. Civ. P. 12(b)(5) ("[A] party may assert the following defenses by motion . . . insufficient service of process[.]").  "Where a defendant challenges the method of service of process under [Rule] 12(b)(5), plaintiff bears the burden of establishing service was valid under Rule 4." *Troll Busters LLC v. Roche Diagnostics GmbH*, No. 11CV56-IEG WMC, 2011 WL 3859721, at *8 (S.D. Cal. Aug. 31, 2011) (citing *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004)).

"Where service of process is insufficient, the court has broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant." *United States v. Distribuidora Batiz CGH, S.A. De C.V.*, No. 07CV370WQHJMA, 2009 WL 2487971, at *9 (S.D. Cal. Aug. 10, 2009) (quoting *Cranford v. United States*, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005)) (citing *Stevens v. Sec. Pac. na''l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)).  "So long as there is a chance that the plaintiff still could accomplish service, the latter remedy is preferred." *Id.* (quoting *Hickory Travel Sys., Inc. v. TUI AG*, 213 F.R.D. 547, 553 (N.D. Cal. 2003).

/ / /

/ / /

### B.  Analysis

Moving Defendants contend that dismissal is warranted under Rule 12(b)(5) because Plaintiff failed to serve them in conformity with Rule 4(h).  (MTD at 4–6.)  Plaintiff concedes that she might not have served Defendants properly under Rule 4(h).  (*See generally* Alt. Ser. Mot.; MTD Opp'n at 4.)  Plaintiff indeed did not correctly serve Moving Defendants.  Additionally, Plaintiff's unclean hands argument is irrelevant to whether she served Moving Defendants correctly.  (MTD Opp'n at 6–7.)

Plaintiff filed Proofs of Service on Moving Defendants based on service on Mr. Peter Anderson, Defendants' U.S. Counsel.  (*See* Proofs of Service.)  Plaintiff argues that California law authorizes substituted service at a place of business under Cal. Civ. Proc. Code § 415.20(b) and claims that "Davis Wright Tremaine is a place of business for [Moving] Defendants."  (MTD Opp'n at 4.)  For natural persons like Defendants, "[t]he term 'usual place of business' includes a defendant's customary place of employment as well as his own business enterprise."  Cal. Civ. Proc. Code § 415.20 Judicial Council's cmt. subdiv. b.  The law offices of Moving Defendants' counsel is not Moving Defendants' "place of business" under Cal. Civ. Proc. Code § 415.20(b).

Although the Court should ordinarily quash service on Moving Defendants rather than dismiss the case for Plaintiff's failure to properly effect service of process under Rule 4(h), *see Distribuidora Batiz*, 2009 WL 2487971 at *9, because Plaintiff has failed to state a claim and the Court lacks personal jurisdiction, the distinction is ultimately without consequence.  The Court therefore **GRANTS** Moving Defendants' Motion to Dismiss **WITHOUT PREJUDICE** for insufficient service under Rule 12(b)(5).

### IV.  Motion for Alternative Service

### A.  Time for Service

The normal 90-day time limit for service does not apply to international service.  *See* Fed. R. Civ. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country.")  Therefore, Moving Defendants' argument that Plaintiff "ignores her failure to either effect

service within ninety days of filing this action or seek additional time" is incorrect. (Alt. Ser. Opp'n at 1.)

### B. Legal Standard

Under Rule 4(f)(3), the court can authorize service on a foreign individual "by other means not prohibited by international agreement." Fed. R. Civ. Proc. 4(f)(3). "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Therefore, the Ninth Circuit has found that "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id.*

Further, "Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Id.* at 1015 (citation omitted). "The Ninth Circuit has rejected the contention that Rule 4(f)(3) can only be utilized if other methods of service have failed or been shown to be unduly burdensome." *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565 (C.D. Cal. 2012) (citing *Rio Properties, Inc.*, 284 F.3d at 1016). Plaintiffs need "only to demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention." *Rio Properties, Inc.*, 284 F.3d at 1016. Any method of service authorized by the court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). And Rule 4(f)(3) cannot be used to retroactively approve prior service. *See Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004) (explaining that a party needs "prior court approval for the alternative method of serving process").

### C. Analysis

Plaintiff seeks authorization to effectuate service on Moving Defendants by "leaving the summons and complaint with a suitable person at Defendants residence, place of

business, attorney's office, or specifically authorized agent." (Alt. Ser. Mot. at 5.) Moving Defendants argue that because the United Kingdom is a signatory to the Hague Convention, "Plaintiff's compliance with the Hague Convention is mandatory and her Motion must be denied." (Alt. Ser. Opp'n at 3.) Moving Defendants are correct that the United Kingdom is a signatory to the Hague Convention, but "courts are divided on the precise effect of the Hague Convention, if any, on any applicable service under Rule 4(f)(3)." *Amazon.com, Inc. v. Tian*, No. 2:21-CV-00159-TL, 2022 WL 486267, at *3 (W.D. Wash. Feb. 17, 2022) (explaining that some courts have found that Rule 4(f)(3) is a separate, alternative means of service outside of the Hague Convention and a minority of courts have found that the Hague Convention is binding federal law and that its provisions govern all forms of service of process).

But the Court does not need to reach a conclusion on this issue because Plaintiff has failed to demonstrate that the facts and circumstances of the present case necessitate intervention. *See Rio Properties, Inc.*, 284 F.3d at 1016. The Court does not find that service via the Hague Convention taking 90 days is a burden requiring court intervention. (*See* ECF No. 21.) While the Court agrees with Plaintiff that she is not obligated to attempt service via the Hague Convention before attempting to use Rule 4(m)(3), *see In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, 2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008), here, because the Hague Convention does not appear to be a time intensive or laborious process, Plaintiff has failed to show why the Court should intervene. *See Rio Properties, Inc.*, 284 F.3d at 1016 (explaining that choosing whether to allow service via Rule 4(f)(3) is at "the sound discretion of the district court"). Therefore, the Court **DENIES** Plaintiff's Motion for Alternative Service of Complaint. If Plaintiff chooses to file an amended complaint and serving Moving Defendants via the Hague Convention becomes burdensome, a motion for alternative service could be proper at that time.

## CONCLUSION

The Court **GRANTS** Defendants Neil Tennant and Chris Lowe's Motion to Dismiss in full, **DISMISSES WITHOUT PREJUDICE** Plaintiff Karen L. Willis's First Amended

Complaint, and **DENIES** Plaintiff Karen L. Willis's Motion for Alternative Service of Complaint. Plaintiff **MAY FILE** an amended complaint curing the deficiencies outlined in this Order within twenty-one (21) days of the electronic docketing of this Order. *Should Plaintiff elect not to file a timely amended complaint, this action will be dismissed without prejudice without further Order of the Court.*

**IT IS SO ORDERED.**

Dated: October 22, 2025

*/s/ Todd Robinson*
Honorable Todd W. Robinson
United States District Judge